# EMILY HATTON, Adm'x of HENRY D. HATTON, *vs.* GEORGE McCLISH.

There are two modes of giving notice of the execution of a foreign commission:—*first*, actual notice, given directly by the commissioner; and *secondly*, constructive notice, by filing interrogatories in the clerk's office before the commission *goes out*.

The interrogatories must be filed a *reasonable time* before the commission *goes out*, so as to enable the opposite party to file cross-interrogatories, but it is wholly immaterial when the commission issues or how long it *lies in the office* after it is issued.

Where interrogatories were filed on the 10th, and the commission did not go out before the 24th of the same month, the notice is sufficient.

Where the *whole* answer to an interrogatory is objected to, if any part of it is admissible, the objection should be overruled, and where there is a *general objection* to testimony, if any part is admissible, it is error to reject the whole.

A prayer that " there was no evidence on which, under the pleadings in the cause, the jury could find for the plaintiff, and their verdict must be for the defendant," resting not upon an *entire failure of evidence*, but upon the assumption that the facts adduced are not legally sufficient to support the issues, is too general under the act of 1825, ch. 117.

Where there are no facts offered in support of a case, or where the testimony offered has been rejected as incompetent, a general prayer that there is *no evidence* is proper.

Hatton *vs.* McClish.

Where testimony has been offered and received *legally insufficient* to establish the issues, or where there is no evidence to establish a *material fact* involved in the issue, the prayer must point out specifically the defect or omissions in the proof.

Where issues are joined on the pleas of *non assumpsit* and *no assets,* and the jury, by their verdict, find the first issue in favor of the plaintiff, but say nothing as to the second, the verdict is bad, but this court cannot notice the defect without a motion in arrest of judgment.

Appeal from Prince Georges county court.

*Assumpsit* by the appellee against the appellant, on an account against the estate of Henry D. Hatton, the defendant's intestate. The declaration contains two counts:—1st, that said Hatton in his lifetime was indebted to the plaintiff for sundry articles properly chargeable in account, as by a particular account thereof herewith exhibited appears; 2nd, a *quantum meruit* count for goods sold and delivered by the plaintiff to said Hatton in his lifetime. The case was tried upon issues joined on the pleas of "*non assumpsit*" and "*no assets.*" The plea of *plene administravit* was filed, but afterwards withdrawn.

*1st Exception.* The plaintiff offered to read the evidence taken under a commission to A. Stewart, of Alexandria, Va. The record shows that this commission was ordered at the November term 1847, of the court, by consent of the parties; that the plaintiff filed his interrogatories on the 10th of February 1848; that the commission issued on the 24th of the same month; that service of a copy of these interrogatories was admitted by the defendant's counsel on the 26th of the same month; the return made on the 3rd of April following, states, that part of the testimony was taken on the 15th of March preceding, due notice of the time and place having first been given to the parties or their attorneys, and the rest on the 18th of the same month, the parties having appeared at this adjourned meeting. The clerk testified that it was the practice in his office to retain commissions in the office after they are made out, until called for by the party having charge of them, and are dated as of the day on which they are made out; that he had no recollection that the commission in this

case remained in the office after the day of its date, but he believes it did from said practice. The defendant then objected to the admissibility of the commission and the evidence returned therewith, because the interrogatories filed by the plaintiff were not served on the defendant's counsel until after the time said commission was issued, and because he had no other sufficient notice of the time and place of executing the same. In support of this objection the defendant offered in evidence to the court a notice from the commissioner, which had been sent by mail to the plaintiff's counsel, and by him addressed to the defendant's counsel, who resided in the same place, by whom it was received at the post office on the 13th of March 1848, but it did not appear on what day it was so deposited in the post office by the plaintiff's counsel. But the court overruled the objection and the defendant excepted.

The defendant then objected to the answers of the witnesses to the *third* and *fourth* interrogatories being read to the jury. All the witnesses except one say that they know nothing of the matters referred to in said interrogatories, and he only answered the fourth. The account which was the plaintiff's cause of action, consisted of eight items, chiefly for fish, fish barrels, and heading of salt barrels. By the fourth interrogatory the witness was asked to look at this account and state whether the plaintiff did or not sell and deliver the fish therein charged to said Hatton in his lifetime, and whether the items of charges in said account are correct, and also all he knows about the sale and delivery of the same? The answer of the witness (Crawford) was in substance, that he knows nothing as to the 1st, 6th and 8th items; as to the others he knows that the fish barrels there charged were delivered by the plaintiff to the said Hatton at or about the time the charges were made, and that he assisted in heading the barrels of salt, but he knows nothing as to the contract between the parties or the price agreed upon. The court overruled this objection also, and the defendant excepted.

The defendant then further objected generally to the reading of the evidence taken under the commission to the jury as

inadmissible under the pleadings in the cause. The evidence, besides that above stated, was in substance, that in the spring of 1841, the witness (Smith) purchased tight fish barrels of the plaintiff for eighty-seven-and-a-half cents each, (that being the price charged at that date in the account for some, whilst others were seventy-five cents each;) another witness (Darling) proves the delivery of some fish barrels to said Hatton by the plaintiff, but does not recollect the number or the price; Shinn, another witness, proves that in the spring of 1841 he purchased fish barrels from the plaintiff at from seventy cents to seventy-five cents each. The court, (MAGRUDER, C. J.,) overruled this objection also, and permitted all the testimony to be read to the jury. To these several rulings the defendant excepted, and prayed the court to sign and seal this bill of exceptions.

*2nd Exception.* The defendant, upon the above evidence, asked the court to instruct the jury, "that there was no evidence on which, under the pleadings in the cause, they could find for the plaintiff, and that their verdict must be for the defendant." This prayer the court refused and the defendant excepted. The verdict was for the plaintiff upon the plea of *non assumpsit,* but no notice was taken of the plea of no assets. The defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*John M. S. Causin* for the appellant argued.

1st. That the testimony taken under the commission was inadmissible, because the interrogatories were not served on the defendant's attorney in time to enable him to file cross-interrogatories to accompany the commission, and the evidence of the clerk cannot be received to contradict the time of service and of issuing the commission as shown by the record. And it should appear affirmatively, that the commission and interrogatories remained in the office long enough after the service for this purpose. The filing interrogatories

and service being equivalent to notice, must be taken most strictly against the party who relies on such proceedings, and the court must be satisfied that the opposite party was allowed an opportunity of filing his cross-interrogatories. 1 *Gill*, 119, *Calvert vs. Coxe.* 4 *Do.*, 321, *Parker vs. Sedwick*, and the same case in 5 *Md. Rep.*, 284. If the notice stated in the return be relied on as supplying this omission, it will appear that the notice was sent to the plaintiff's attorney, and not to the defendant's; and that both counsel residing in the same town, the notice should have been served or left at the residence or place of business of the defendant's counsel, and not put in the post office, and the reason of this is apparent from the fact, that in this case it was not received until two days before the day for taking the proof.

2nd. If the commission be admissible, it is insisted, that the interrogatories and the answers thereto are inadmissible. The cause of action is an account against the *estate* of Hatton, and the evidence was certainly inadmissible under the first count in the declaration, because in such case the articles, *as charged*, must be proved to have been sold and delivered, and at the price charged in the account. Filing an account gives the *nar* a special character and general proof will not avail. The evidence is not proper under the *quantum meruit*, because it does not establish the *market* value of similar barrels, but only proves a *special* contract of purchase between the plaintiff and the witnesses, (Smith and Shinn,) to which the defendant was a stranger, and thus it is *res inter alias acta*, and to admit it would be to allow the plaintiff to use his own acts with a third party, as evidence against a stranger. 1 *Gill*, 116, *Calvert vs. Coxe.* 2 *Littell*, 355. It is settled, that if goods be sold at a specific price, the plaintiff cannot recover under a *quantum meruit*. 1 *Strange*, 648, *Weaver vs. Boroughs.* 1 *Chitty's Pl.*, 341. In *De Sobry vs. De Laistre*, 2 *H. & J.*, 191, it is said, "if a plaintiff files an account containing the items of his claim, he is precluded from going into evidence to establish his claim, in a manner different from that he had elected by his account to consider

the defendant his debtor." Here the plaintiff files an account against the *estate* as upon a contract with the defendant as administratrix, and then offers evidence to show that the contract was made on the goods sold to Hatton in his lifetime. The defendant particularly excepts to the 3rd and 4th interrogatories. They ask the witness as to their knowledge of the sale and delivery of fish, when there is no such claim made in the pleadings. The questions should have been put to the witnesses generally, without *leading them* as to times, articles and amounts, *by reference* to the account.

3rd. Upon the second exception it is insisted, that the evidence was insufficient to entitle the plaintiff to a verdict, because conceding that the barrels were delivered there was a failure of evidence as to the value at the time of delivery. The reasons presented on the second point apply to this. Again, conceding that the sale and delivery and value are proved, there is no evidence upon the plea of no assets. A party defendant charged as administrator, cannot be recovered against unless the plaintiff proves that he had assets to pay the claim, when that question is raised by the pleadings, and the burthen of such proof is upon him. 2 *H. & G.*, 281, *Laidler vs. The State.*

4th. The prayer is not too general under the act of 1825, ch. 117. The case of *Stewart vs. Spedden*, 5 *Md. Rep.*, 444, is the latest exposition of that act by this court, and does not impugn the decision of *Tyson vs. Shueey*, in the same book, 540. The latter case is in consonance with the decision in *Stockton vs. Frey*, 4 *Gill*, 422, and could not have been otherwise determined. The prayer in the present case points the court to the *legal sufficiency* of the evidence: *no evidence*, means, *no legal and sufficient evidence.* The absence of evidence to sustain *any one* of several facts, all of which must be established before the plaintiff can recover, amounts to a *total failure of evidence*, and in such cases a prayer that there is *no evidence* warranting a recovery is proper. Such was the express decision in *Stewart vs. Spedden*, and also in *Cole vs. Hebb*, 7 *G. & J.*, 28. Here the plaintiff must prove

assets or fail, and having adduced no evidence on this point the prayer was proper and should have been granted.

*C. C. Magruder* for the appellee argued.

1st. That the defendant had due notice of the time and place of taking the proof under the commission, by the actual service of a copy of the plaintiff's interrogatories, and afterwards by a written notice received from the commissioner. It is also insisted, that the commissioner's return, that he had given due notice of the time and place of taking the proof, is conclusive evidence of the fact in this case, the force of which is not to be impaired by the evidence offered by the defendant to the contrary. 2 *H. & J.*, 99, *Owings vs. Norwood.* 5 *Do.*, 438, *Law vs. Scott.* 1 *Gill*, 119, *Calvert vs. Coxe.* 4 *Gill*, 318, 5 *Md. Rep.*, 281. These cases show that there are two modes of giving notice in case of commissions like the present; 1st, by actual notice from the commissioner; and 2nd, by filing interrogatories in time for the party to file his cross-interrogatories. In this case an interval of fourteen days elapsed between the filing of the interrogatories and the issuing of the commission, and this is surely a sufficient compliance with the latter method of giving the notice. But again, the return states, that at the adjourned meeting the *parties were present*, and this is a waiver of all irregularity as to the notice. *Williams vs. Banks*, 5 *Md. Rep.*, 198.

2nd. That the evidence was admissible under the pleadings in the cause, and if there was any defect in the declaration, the verdict of the jury cured it, and every intendment will be made to support the verdict: the judgments of the courts below coming up upon appeal, will be sustained by every fair legal intendment. 6 *H. & J.*, 81, *Speake vs. Sheppard.* 2 *H. & G.*, 274, *Neal vs. Fisher.* 1 *Do.*, 164, *Giles vs. Perryman.* 3 *H. & J.*, 109, *Tyson vs. Rickard.* 9 *G. & J.*, 15, *State vs. Harrison.* 11 *Do.*, 472, *Ragan vs. Gaither.* 1 *H. & G.*, 4 *Vandersmith vs. Washmein.* 3 *Md. Rep.*, 61, *Bryan vs. Coursey.* 4 *Do.*, 435, *Ridgeley vs. Crandall & wife.*

Hatton vs. McClish.

3rd. That the prayer of the defendant in the second exception, was properly rejected because it was too general  There was evidence tending to prove the issues in the case, tending to prove that the articles were sold and delivered to Hatton ; when the counsel therefore asked the court to say to the jury that there was *no evidence* tending to prove the issue, it was asking them to go too far: the specific objection to the testimony should have been pointed out in the prayer.   On this point see 2 *G. & J.*, 302, *Davis vs. Leab.*   3 *Do.*, 369, *Penn vs. Flack.*   5 *Do.* 489, *Grahame vs. Harris.*   2 *G. & J.*, 382, *Davis vs. Barney.*   3 *Gill*, 198, *Budd vs. Brooke.*   1 *Md. Rep.*, 86, *Bayne vs. Suit.*   5 *Md. Rep.*, 121, *Coates vs. Glenn.   Ibid.*, 541, *Tyson vs. Shueey.*   If the particular objection had been made, that there was no proof of assetts, we could have supplied it in a moment by going to the orphans court and obtaining the requisite proof.   But again, there is no distinction between the plea of *plene administravit* and *no assetts*, and the withdrawal of the former was in fact a withdrawal of the latter.   Again, the prayer says, we are not entitled to *any judgment*, but surely having sustained the first issue we were entitled to a judgment to bind assets, *quando acciderint.*   2 *Wms. on Ex'crs*, 1990.   *Tollers on Ex'crs*, 88, *sec.* 61.

MASON, J., delivered the opinion of this court.

There are two modes by which notice may be given of the execution of a foreign commission to take testimony.   One is, actual notice, to be given directly by the commissioners; the other is constructive notice, and results from the filing of interrogatories in the office of the clerk before the commission goes out.   The object of this notice is to enable the opposite party to file cross-interrogatories, and in either case the notice must be given a reasonable time before the testimony is taken.   In the case now before us, the defendant had both actual and constructive notice of the time and place of the execution of the commission, but in each instance it is denied that the notice was sufficient in point of time.

We need not decide whether the actual notice, or that given by the commissioner, was sufficient or not, as we regard the constructive notice fully sufficient in point of law.

At the November term of the court, the commission was ordered by consent of parties. On the 10th February following the plaintiff filed his interrogatories, and on the 24th of the same month the commission issued, but the precise time of its *going out of the office* does not appear from the record. The counsel on both sides have assumed, that it was necessary for the commission *to lie in the office* a certain time before going out, in order that the notice resulting from the filing of the interrogatories could be availing. We find no authority nor any sound reason for such an assumption. None of the cases on this subject advance such a notion. They all state that the interrogatories should be filed a reasonable time before the commission *goes out;* from which it would appear that the precise time when it was issued, or how long it had remained in the office after it was issued, were circumstances wholly immaterial: *Parker vs. Sedwick,* 5 *Md. Rep.,* 281, and the cases there cited. We can discover no good reason why it should be otherwise. The commission, itself, furnishes no material information to the opposite party other than he had already received from the order of the court directing the commission to issue. The facts suggested by each are the same, and are simply the names of the commissioners, the place to which the commission issues, and the parties to the suit. The balance of the commission is usually mere matter of form. The *interrogatories* furnish the material and only information necessary to enable the adverse party to file his cross-interrogatories, if he deems any important, and if they remain in the office a reasonable time before the commission *goes out,* it will be sufficient. In this case they were filed on the 10th of February, and the commission having been issued on the 24th, did not of course *go out* before that day. This was notice enough, the theory being, that notice will be presumed where the interrogatories have remained a sufficient time in the office before the commission previously ordered by the court *goes out.*

As the practice upon this subject has been somewhat loose

and uncertain, we will take this occasion to suggest to the different courts of the State the propriety of adopting some rule of court, fixing a time within which the interrogatories of the party applying for the commission should lie in the clerk's office before the commission goes out, in order to create presumptive notice; or, requiring the party actually to serve a copy of the interrogatories upon the opposite party in time to enable him to file his cross-interrogatories.

Besides the question we have just considered, the first exception shows that the answers of the several witnesses to the *third* and *fourth* interrogatories were objected to, and the objection overruled by the court. The record shows, that of the four witnesses examined under the commission, only one, (Crawford,) professed to know anything in regard to the information sought to be elicited by the third and fourth questions, and he only answered the fourth. Surely, a response by a witness to an interrogatory, that he knows nothing of the matters therein referred to, is not liable to objection. The objection then can only relate to the answer of Crawford to the fourth question. By reference to that answer it will readily appear, that much of it was legal and admissible, and though the balance may not have been, yet as the *whole* was objected to, the court was right in not sustaining the objection. The same remark is applicable to the *general objection* to the whole testimony returned with the commission, which is the third point raised by the first exception. Part of this evidence being admissible, it would have been error to reject the whole. *Budd vs. Brooke,* 3 *Gill,* 220. *Waters vs. Dashiell,* 1 *Md. Rep.,* 474.

The other questions so fully discussed by the counsel were supposed to arise under the appellant's prayer, the rejection of which constituted the second exception. The point first to be settled is, whether the prayer is sufficiently definite and specific, under the act of 1825, ch. 117, to raise the points which the appellant wishes us now to decide? We think the prayer was too general, and therefore was properly rejected. It prayed the court "to instruct the jury, that there was no evidence on which, under the pleadings in the cause, they could find for the plaintiff, and their verdict must be for the defendant."

There have been a great many decisions by the Court of Appeals, (between twenty and thirty,) upon this particular subject, and it would be a far more difficult than profitable task, to attempt to reconcile them.   We can safely say however, that we think the general tenor of those decisions has been to discountenance such general prayers, and indeed in most of those cases, where questions under general prayers have been considered, they have been, where the mind of the court appears not to have been particularly called to the structure of the prayer, but rather to the questions discussed under it, and the decisions confined to the latter.   We can discover no material difference between this and the case of *Penn vs. Flack*, 3 *Gill & Johns.*, 369, where the prayer was, "that the plaintiff, upon the evidence, was not entitled to recover upon either count in the declaration."   To our minds no argument has been addressed why we should depart from this decision, which was one of the earliest upon the subject, and which we think correctly expounds the true theory of the act of 1825, ch. 117, and in future will endeavor to adhere to that exposition.

The prayer in the present case does not rest upon the assumption, that there was *no evidence* or an *entire failure of evidence* to support the issues, but it assumes that there were facts adduced in evidence, but which were not legally sufficient or proper to support the issues.   In such a case, under the act of 1825, the prayer should direct the mind of the court specifically to the supposed errors or omissions in the proof, in order that the opposite party might have the opportunity, if he can, of supplying the defects in his proof by new and proper testimony.   On the other hand, where there are no facts offered in support of a case, or where the testimony offered has been rejected as incompetent, then a general prayer, *that there is no evidence, &c.*, would be proper, because no other prayer in such case could be framed; but, as we said, where testimony has been offered and received, *legally insufficient* to establish the issue, or where there is no evidence to establish a *material fact involved in the issue,*

53     v.6

then the prayer should point out specifically the defects or omissions in the proof.

This subject has been recently very fully and correctly reviewed by this court, in the case of *Tyson vs. Shueey*, 5 *Md. Rep.*, 540, to which we refer, and the cases there cited.

Our attention has been called to the verdict of the jury in this cause, which was manifestly erroneous, and the judgment rendered thereon would be reversed if the point was properly presented on this appeal. Issues were joined on two pleas, *non assumpsit* and *no assets*, and the jury found that the plaintiff *did promise, &c.*, and assessed the damages, but they say nothing upon the plea of *no assets*. It might well happen that the defendant in his lifetime, did owe and promise to pay the debt, yet at the same time may have left no assets at his death wherewith to pay the same. A verdict under such circumstances should not be rendered against the administratrix. But as we have said, this point is *not before* us, as it would have been had there been a motion in arrest of the judgment. *Sasscer vs. Walker*, 5 *Gill & Johns.*, 102.

The case of the *State vs. Carleton and others*, 1 *Gill*, 249, does not conflict with the views we have expressed as to the mode of presenting this question to the appellate court. In that case, as in this, the judgment was reversed upon other points properly presented on the appeal, and this question was afterwards commented upon incidentally, and the same view taken of it, which we have expressed in this opinion.

*Judgment affirmed.*