J-A16006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MONTY CLAIR CHAPMAN, TRUSTEE OF THE MONTY CLAIR CHAPMAN TRUST AGREEMENT DATED AUGUST 17, 2000, AND CONNIE A. CHAPMAN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| CHEVRON APPALACHIA, LLC, | |
| Appellee | No. 1201 WDA 2015 |

Appeal from the Order Entered July 14, 2015
In the Court of Common Pleas of Clarion County
Civil Division at No(s): 902 CD 2014

BEFORE:  SHOGAN, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 29, 2016**

Appellants, Monty Clair Chapman, trustee of the Monty Clair Chapman Trust Agreement dated August 17, 2000, and Connie A. Chapman (collectively "the Chapmans"), appeal from the order entered on July 14, 2015, sustaining Chevron Appalachia, LLC's ("Chevron") preliminary objections in the nature of a demurrer.  We affirm.

The relevant facts and procedural history in this matter were set forth by the trial court as follows:

_____

\* Retired Senior Judge assigned to the Superior Court.

[The Chapmans] are the owners of the surface and subsurface rights of various parcels in Clarion County. In June 2012, representatives of [Chevron] approached [the Chapmans] to discuss the possibility of entering into a lease for oil and gas. The fruits of these discussions were a pair of documents titled "Paid up Oil and Gas Lease" and accompanying term sheets and payment schedules which [the Chapmans] signed on June 25 and June 22, respectively (Exhibits C and D to the Complaint). Section 24 of both leases provided the following:

> *Lessor understands and agrees that Lessee is not obligated to pay the bonus payment to lessor until the review and approval of the Lessee's management. Management approval shall occur on the earliest of (a) the date on which the Department of Environmental Protection issues Lessee a permit to drill a well on the leased premises ... (b) the date on which the Lessee mails the lease bonus to Lessor, or (c) the date on which the Lessee sends to the Lessor a copy of this lease countersigned by a vice-president or a more senior officer of Lessee. Id.*

Section 3 of the leases further provided that they would become void in 120 days unless operations had commenced on the premises or the lease bonus was paid. At the expiration of the 120 day period in October 2012, none of the conditions outlined in sections 3 or [2]4 of the leases had been fulfilled. Despite this, [Chevron] recorded both leases in November 2012 and failed to record a release until June of the following year.

In their Complaint, [the Chapmans] allege that by recording the leases [Chevron] manifested its intent to be bound by the terms of the contracts and thus was required to tender the agreed-upon bonus payment. [The Chapmans] further alleged that by improperly recording the voided lease documents, [Chevron] gained a benefit for which they should compensate the [the Chapmans]. [Chevron] subsequently filed timely Preliminary Objections to both [the Chapmans'] claims for breach of contract and unjust enrichment.

Order, 7/14/15, at 1-2.

The trial court held that by the terms of the leases, Chevron was never obligated to pay the bonuses to the Chapmans because none of the conditions precedent occurred; thus, the contracts expired after 120 days. Order, 7/14/15, at 2-3. Accordingly, there was no breach of contract. **Id**. at 3. Additionally, the trial court found that the Chapmans failed to allege any plausible benefit that Chevron received as a result of its actions; hence, there was no unjust enrichment. **Id**. For those reasons, the trial court sustained Chevron's preliminary objections in the nature of a demurrer and dismissed the Chapmans' complaint.[1] This timely appeal followed. The Chapmans and the trial court have complied with Pa.R.A.P. 1925.

On appeal, the Chapmans raise five issues for this Court's consideration:

> 1. The Trial Court erred in finding that the parties did not have binding Agreements/Contracts which required Chevron to pay the bonus payments referenced in the written Lease Agreements to [the Chapmans].
>
> 2. The Trial Court erred in failing to find, as pled and at the Preliminary Objection stage, that Chevron's actions in recording the subject Oil and Gas Leases and related documents constituted conduct which manifested its assent to the terms of the written Oil and Gas Leases. Furthermore, the Court erred when if [sic] failed to find that the conduct alleged in the

---

[1] The Chapmans withdrew a claim of slander of title. Accordingly, the July 14, 2015 order was final as it disposed of all claims and all parties. **See Hill v. Ofalt**, 85 A.3d 540, 546 n.5 (Pa. Super. 2014) (stating that "as a general rule, an order sustaining preliminary objections and dismissing a complaint is a final and appealable order" and discussing the requirement that the order in question dispose of all claims and all parties).

Complaint manifested Chevron's assent to the terms of the written Oil and Gas Leases.

3. The Trial Court erred in failing to find that Chevron's actions, including but not limited to recording the subject Oil and Gas Leases and related documents, and leaving said documents on record at the Recorder of Deeds Office, manifested its assent to the terms of the subject Oil and Gas Leases.

4. The Trial Court erred in failing to find that Chevron received the benefit of the control of [the Chapmans'] oil and gas interests from the time that the Oil and Gas Leases were recorded until the time that the leases were surrendered.

5. The Trial Court erred in failing to find that Chevron appreciated the benefit of possession of [the Chapmans'] oil and gas interests.

The Chapmans' Brief at 7.

Appeals from orders sustaining preliminary objections in the nature of a demurrer are reviewed under the following standard:

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of

- 4 -

> claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.
>
> Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 208-209 (Pa. Super. 2012) (internal citations and quotation marks omitted).

The Chapmans' first three issues assail the trial court's conclusions regarding the breach of contract claims. The crux of the Chapmans' argument is that the trial court erred in finding that there was no breach of contract because the terms of the leases, Chevrons' conduct, and the recordation of the leases support the opposite conclusion. Accordingly, we address these issues concurrently.

We note that "a lease is in the nature of a contract and is controlled by principles of contract law." *T.W. Phillips Gas and Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012) (citation omitted). The lease "must be construed in accordance with the terms of the agreement as manifestly expressed, and the accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement." *Id*. (internal quotation marks and citation omitted).

As noted above, the leases at issue provided that the Chapmans would receive payment when Chevron's management approved the leases. This approval could occur when either: the Department of Environmental

Protection issued Chevron a permit to drill a well; the date on which Chevron mails the payment to the Chapmans; or, the date on which Chevron sends to the Chapmans a copy of the lease countersigned by a vice-president or a more senior officer of Chevron. Lease, 6/22/12, at ¶24; and Lease, 6/25/12, at ¶24. It is undisputed that none of these conditions precedent occurred, and by their express terms, the leases were null and void 120 days later, which was, at the latest, October 23, 2012. Lease, 6/22/12, at ¶3; and Lease, 6/25/12, at ¶3.

Despite the absence of the conditions precedent and the termination of the leases after 120 days, the Chapmans aver that by recording the leases and leaving these documents on record at the Recorder of Deeds Office, Chevron assented to the terms of the leases. The Chapmans' Brief at 14. The Chapmans, however, provide no authority for this conclusion.

In their brief, the Chapmans state: "An offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted." The Chapmans' Brief at 13 (quoting *O'Brien v. Nationwide Mut. Ins. Co.*, 689 A.2d 254, 259 (Pa. Super. 1997)). Additionally, the Chapmans cite to the Uniform Commercial Code and note that "A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." The Chapmans' Brief at 14 (quoting 13 Pa.C.S. § 2204(a)). However, while these are indeed correct statements of

law, the Chapmans fail to illustrate how Chevron's conduct supersedes or invalidates the express terms of the leases or how the trial court erred in its determination. **See T.W. Phillips Gas and Oil Co.**, 42 A.3d at 267 (leases must be construed pursuant to their expressed terms). Moreover, the recording of the leases was of no force or effect. The leases were not recorded until after the passage of 120 days, and by their terms, the leases terminated. As the trial court noted:

> In the present case, the leases unambiguously stated that management acceptance would occur on the earliest of three contingencies, none of which had occurred by October of 2012. At that time, the 120 days [Chevron] had to accept the terms of the lease expired and [Chevron's] management lost the power to accept the terms of the contract. **See Textron. Inc. y. Froelich**, 302 A.2d 426, 427 (Pa. Super. 1973) ("The power to create a contract by acceptance of an offer terminates at the time specified in the offer."). Accordingly, even if the court were to decide that [Chevron's] recordation of the leases was a manifestation of assent, such a manifestation would have had no effect because the period to accept the offer had expired.

Order, 7/14/15, at 2-3.

We are satisfied that because the conditions precedent were not met, after the passage of 120 days there was no agreement among the parties. Thus, there was no error of law or abuse of discretion in the trial court granting a demurrer as to the Chapmans' claims for breach of contract. The Chapmans are entitled to no relief on issues one, two, or three.

In the Chapmans' fourth and fifth claims of error, they assert that the trial court erred in failing to find that Chevron received a benefit from the possession and control of the Chapmans' oil and gas interests from the time

that the leases were recorded until the leases were surrendered. The Chapmans' Brief at 19-22.[2] However, aside from baldly asserting that Chevron received a benefit,[3] the Chapmans fail to identify that benefit. The trial court aptly addressed the Chapmans' claims for unjust enrichment as follows:

> In order to maintain an action for unjust enrichment, a party must plead and prove that they conferred benefits on the defendant, and that defendant appreciated such benefits. **Limbach Co., LLC v. City of Philadelphia**, 905 A.2d 567, 575 (Pa. Cmwlth. 2006)[; **Stoeckinger v. Presidential Financial Corp. of Delaware Valley**, 948 A.2d 828, 833 (Pa. Super. 2008)]. A plaintiff cannot "merely allege its own loss as the measure of recovery . . . but instead must demonstrate, that appellee has in fact been benefitted." **Meehan v. Cheltenham Twp.**, 189 A.2d 593, 595 (Pa. 1963).
>
> Here, [the Chapmans] have alleged various untoward acts by [Chevron], namely the false recording of the [leases], but they have failed to allege any plausible benefit that [Chevron] received as a result of those acts. It is not alleged that [Chevron] sold the leases in question or attempted to use them as security, nor that it acted upon them to drill upon [the Chapmans'] land when they were not permitted to do so. Lacking any allegation of real benefit, the court must SUSTAIN

---

[2] The Chapmans rely primarily on an unreported decision of the federal district court for the middle district of Pennsylvania, **Masciantonio v. SWEPI LP**, 2014 WL 4441214 (M.D.Pa. September 9, 2014) (Not Reported in F.Supp.3d). The Chapmans' Brief at 19-21. However, pronouncements of the lower federal courts are not controlling authority in this Court. **Gongloff Contracting, L.L.C. v. L. Robert Kimball & Associates, Architects and Engineers, Inc.**, 119 A.3d 1070, 1078 n.6 (Pa. Super. 2015). Moreover, we are constrained to point out that **Masciantonio** is distinguishable in that it dealt with an ambiguity in the language of a lease. In the case at bar, we are not faced with ambiguous lease terms.

[3] The Chapmans' Brief at 22.

this Objection as well and DISMISS counts 5 and 6 of the Complaint.

Order, 7/14/15, at 3-4.

We agree with the trial court. Absent any claim or evidence of Chevron obtaining a benefit from recording the leases, the claim for unjust enrichment fails. *Joyce v. Erie Ins. Exchange*, 74 A.3d 157, 169 (Pa. Super. 2013). Additionally, as we concluded above, the recording of the leases had no force or effect. Chevron engaged in a superfluous act, and we fail to discern what benefit Chevron gained from recording the void lease documents. Therefore, we conclude that the Chapmans are due no relief on their final two issues.

For the reasons set forth above, we discern no error of law or abuse of discretion by the trial court's grant of Chevron's preliminary objections in the nature of a demurrer. Accordingly, we affirm the order entered on July 14, 2015.

Order affirmed.

Judge Olson joins the Memorandum.

Judge Strassburger files a Dissenting Memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/29/2016</u>